USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA,

-against-

DOMINGO ROSARIO FIGUEROA,

                      Defendant.
------------------------------------------------------------ X

92-CR-0019 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

       As the result of a successful petition pursuant to 28 U.S.C. § 2255 to vacate one count of conviction for violating 18 U.S.C. § 924(c), Defendant was resentenced on March 30, 2021. Dkt. 110. In advance of the resentencing, the Court directed the parties to detail their positions on: (i) whether the amendments to 18 U.S.C. § 924(c)(1)(C) made as part of the First Step Act apply to Defendant's resentencing; and (ii) whether Defendant's prior convictions for robbery under Puerto Rico law constitute crimes of violence such that Defendant is subject to the Armed Career Criminal Act ("ACCA") mandatory minimum for his conviction for violating 18 U.S.C. § 922(g) and, more broadly, to the career offender guideline.[1] Having provided the parties with a tentative ruling in advance of the resentencing date, Dkt. 111, the Court gave the parties an opportunity to speak on each issue at resentencing; both parties rested on their written submissions. For the following reasons the Court adheres to its tentative ruling and holds that

---

[1] The parties were also asked to address whether the Court had the authority to order Defendant's sentence to run concurrent to a sentence previously imposed in the Eastern District of Virginia. Although the Government conceded, with no citation to authority, that the Court had the discretion to do so, the Court disagrees. Section 3584(a) of Title 18, United States Code, gives the sentencing court discretion to run a sentence concurrent to an undischarged sentence. In this case, the Virginia sentence has been fully discharged since early 2007. The Puerto Rico sentences, however, are not fully discharged; according to the Government, Defendant has 28 years, 1 month, and 25 days remaining on his Puerto Rico sentences. Dkt. 112. Accordingly, the new sentence can run concurrently to the sentences imposed by the Superior Court of Puerto Rico.

the First Step Act does apply to Defendant's resentencing and that Defendant is not subject to the ACCA mandatory minimum and career offender enhancement.

## BACKGROUND

Defendant has an extensive criminal history; he has been convicted of multiple crimes in the Superior Court of San Juan, Puerto Rico, the District Court for the Eastern District of Virginia, and the District Court for the Southern District of New York. The court will briefly summarize the defendant's criminal history.

### I. Superior Court of Puerto Rico

Throughout the 1980's, Defendant was convicted of kidnapping and a series of robberies in the Superior Court of San Juan, Puerto Rico. Presentence Report ("PSR"), Dkt. 80 ¶¶ 54-56. On November 22, 1982, Defendant was sentenced to eight years' imprisonment for robbery under Puerto Rico law to be followed by two years' imprisonment for a weapons charge. PSR, Dkt. 80 ¶ 54. On December 30, 1985, Defendant was sentenced to twelve years' imprisonment for robbery under Puerto Rico law to be served consecutive to any sentence he was already serving. *Id*. ¶ 55. On September 4, 1986, Defendant was sentenced to: (i) sixteen years' imprisonment for kidnapping under Puerto Rico law; (ii) twelve years' imprisonment for robbery under Puerto Rico law; (iii) five years' imprisonment for violation of Puerto Rico's Article 8 Weapons Law; and (iv) five years' imprisonment for violation of Puerto Rico's Article 6 Weapons law, all of which were ordered to be served concurrently. *Id*. ¶ 56.

On November 17, 1989, Defendant escaped from the Commonwealth of Puerto Rico's Department of Corrections. Defendant used "an ice-pick like instrument to force [a corrections] officer to turn over his .38 caliber revolver." *Id*. ¶ 56.

## II. Eastern District of Virginia

Not quite two years after he escaped from prison in Puerto Rico, Defendant committed an armed robbery of a post office in Annandale, Virginia. PSR, Dkt. 80 ¶ 57. In connection with that robbery, Defendant was subsequently indicted and convicted of: (i) postal robbery in violation of 18 U.S.C. § 2114; (ii) conspiracy to commit postal robbery in violation of 18 U.S.C. § 371; and (iii) using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) and 2. *Id*. On May 11, 1992, Defendant was sentenced to 211 months' imprisonment. *Id*. The sentence was ordered to run consecutive to any term of imprisonment being served or previously imposed. *Id*.

## III. Southern District of New York

In December 1991, Defendant was arrested for kidnapping two sex workers and attempting to obtain ransom from one of their pimps. PSR, Dkt. 80, ¶¶ 12-20. After he was convicted in Virginia for the postal robbery, on November 8, 1994, Defendant was indicted and charged in New York with: (i) conspiracy to kidnap, in violation of 18 U.S.C. § 1201(c); (ii) kidnapping of LaJoclyn Yvette Walker, in violation of 18 U.S.C. § 1201(a)(1); (iii) kidnapping of Lori Cooper, in violation of 18 U.S.C. § 1201(a)(1); (iv) conspiracy to make extortionate threats in violation of 18 U.S.C. § 371; (v) making extortionate threats, in violation of 18 U.S.C. § 875(b); (vi) using and carrying a firearm during and in relation to the kidnapping of LaJocelyn Yvette Walker, as charged in Count Two, in violation of 18 U.S.C. § 924(c); (vii) using and carrying a firearm during and in relation to the kidnapping of Lori Cooper, as charged in Count Three, and in relation to the transmission of extortionate threats, as charged in Count Five, in violation of 18 U.S.C. § 924(c); and (viii) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). *Id*. ¶¶ 1-10.

Following a trial at which he was convicted on all charges, on June 15, 1995, Defendant was sentenced to an aggregate term of 70 years imprisonment. *Id*. at 2. The trial judge determined that Defendant was a career offender; the Sentencing Guidelines established a total offense level of 37 and a criminal history category of VI. *See* 16-CV-4469, Dkt. 29, Ex. D at 13. That Guidelines calculation yielded a then-mandatory guidelines range of 360 months to life imprisonment. *Id.* As noted *supra,* Defendant had a prior conviction under § 924(c) from the Eastern District of Virginia, which resulted in mandatory consecutive twenty-year sentences on each of Counts Six and Seven (i.e., 40 years total). PSR, Dkt. 80 at 2. The sentence was ordered to run consecutive to the 271 months' sentence that had been imposed in the Eastern District of Virginia. *Id*.

## IV.   28 U.S.C. § 2255 Petition

On February 7, 2020, Defendant filed a § 2255 petition to vacate his convictions on Counts Six, Seven, and Eight in light of the Supreme Court's decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), *United States v. Davis*, 139 S. Ct. 2319 (2019), and *Rehaif v. United States*, 139 S. Ct. 2191 (2019). *See* 16-CV-4467, Dkt. 29. On May 6, 2020, this Court vacated Defendant's § 924(c) conviction on Count Six, denied the balance of the petition, and ordered resentencing. 16-CV-4467, Dkt. 37. Resentencing was held on March 30, 2021.[2] Dkt. 110.

---

[2] Due to the COVID-19 pandemic, Defendant's relocation to a different BOP facility, and the logistical difficulties of scheduling this resentencing remotely, the resentencing was adjourned multiple times.

## DISCUSSION

I.   **Application of the First Step Act**

Section 924(c)(1)(C) of Title 18, United States Code, provides for enhanced mandatory minimums when a defendant is convicted of a successive § 924(c) charge. When Defendant was sentenced in 1994, § 924(c)(1)(C) read:

> In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.

Accordingly, because Defendant had previously been convicted for violating § 924(c), Defendant was sentenced to mandatory consecutive twenty-year sentences on each of his § 924(c) convictions in this case. PSR, Dkt. 80 at 2; *see* 16-CV-4469, Dkt. 29, Ex. D.

The First Step Act of 2018 included a "Clarification of Section 924(c)." Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"). Specifically, § 403(a) of the FSA amended § 924(c)(1)(C) to mandate increased punishment only in the case of a "violation of this subsection that occurs after a prior conviction under this subsection has become final." In other words, Congress changed the law so that only a second § 924(c) violation committed after a prior § 924(c) conviction had become final would trigger the consecutive mandatory minimum 25-year sentence required by 924(c)(1)(C)(i).[3]   FSA § 403(a); *United States v. Davis*, 139 S. Ct. 2319, 2324 n.1 (2019).

Section 403(b) of the FSA, entitled "Applicability to Pending Cases," states:

> This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.

Here, Defendant's initial § 924(c) violation occurred on October 18, 1991, when he used a gun to rob a post office in Virginia. PSR, Dkt. 80 ¶ 57. Importantly, however, Defendant was

---

[3]   The mandatory minimum for a subsequent § 924(c) conviction was increased from 20 to 25 years in 1998. Gov. Br., Dkt. 108 at 2 n.2.

not sentenced for that violation until May 11, 1992. *Id*. Defendant committed subsequent violations of § 924(c) from December 10, 1991 to December 13, 1991. *Id*. ¶¶ 8-9. In other words, Defendant's subsequent § 924(c) violations were committed before his initial § 924(c) conviction became final. Accordingly, as the Government concedes, "under the version of the law in effect today," as amended by the FSA, the successive penalty provision of § 924(c)(1)(C) does not apply. Gov. Br., Dkt. 108 at 2.

The issue before the Court is whether Defendant, whose sentence was vacated after the enactment of the FSA, gets the benefit of the changed law. The Government argues that he does not and urges the Court to "apply the version of the law in effect at the time of the offense." Gov. Br., Dkt. 108 at 2. The Government's position, then, is that the Defendant is subject to a mandatory minimum term of 20 years' imprisonment on his remaining § 924(c) conviction. *Id*. at 2-3. Defendant argues that the Court should "apply current law, not a provision discarded in 2018." Def. Br., Dkt. 104 at 3.

The Fourth, Sixth, and Seventh Circuits have held that the FSA applies during resentencing in certain circumstances. *See United States v. Bethea*, No. 19-4618, 2021 WL 219201, at *4 (4th Cir. Jan. 21, 2021) (holding that the FSA applied to defendant whose sentence was vacated pursuant to a § 2255 petition after the FSA was enacted); *United States v. Henry*, 983 F.3d 214, 217 (6th Cir. 2020) (holding that the FSA applied to defendants whose cases were remanded for resentencing prior to the FSA's enactment but who had not yet been resentenced at the time of enactment); *United States v. Uriarte*, 975 F.3d 596 (7th Cir. 2020) (en banc) (holding that the FSA applied to defendant whose sentence had been vacated and remanded prior to the FSA's enactment but who had not yet been resentenced at the time of enactment). Although

these cases do not address the specific posture of Defendant's case, the Circuits' reasoning, and particularly the Fourth Circuit's reasoning in *Bethea*, is relevant and persuasive.

In *Bethea,* the Fourth Circuit considered the applicability of the FSA to a defendant's resentencing following vacatur of the defendant's original sentence. 2021 WL 219201, at *3-4. In 2015, Mr. Bethea was sentenced to a mandatory minimum sentence of life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846. *Id.* at *2. In 2016, Mr. Bethea filed a § 2255 petition in the District Court for the District of South Carolina, asserting multiple claims of ineffective assistance of trial counsel, including failure to file a direct appeal. *Id.* Congress passed the FSA while Mr. Bethea's § 2255 petition was pending. *Id.* Section 401 of the FSA provides, *inter alia*, for reduced criminal sentences under § 841(b)(1)(A). *Id.*; FSA §§ 401(a)-(b). Section 401(c) of the FSA, which is functionally identical to § 403(b) of the FSA, states that the Section 401 amendments "shall apply to any offense that was committed before the date of enactment of this Act*,* if a sentence for the offense has not been imposed as of such date of enactment." FSA § 401(c).

In 2019, the district court vacated Mr. Bethea's original conviction, reimposed the same sentence, entered a new judgment to restart the time for the defendant to file a direct appeal of his conviction, and directed the clerk of court to enter a notice of appeal on Mr. Bethea's behalf. 2021 WL 219201, at *2*.* On appeal, Mr. Bethea argued that the FSA's amendments to § 841(b)(1)(A) "applied at the time his sentence was corrected by the district court" in 2019 and, therefore, rendered the reimposed life imprisonment sentence illegal. *Id.* at *3. The Government argued that the FSA did not apply to Mr. Bethea's new sentence because "a sentence" had already been imposed in 2015, prior to the FSA's enactment. *Id.* at *4; *see* FSA § 401(c).

The Fourth Circuit held that the FSA did apply to Mr. Bethea's new sentence because his prior sentence was vacated and reimposed after the FSA's enactment. 2021 WL 219201, at *10 ("[B]ecause Bethea's sentence was nullified following a § 2255 motion . . . the FSA applied to his sentence as imposed in 2019."). At the outset, the court rejected the Government's argument that the FSA's reference to "a sentence" means "any pre-FSA sentence," even if that sentence is later vacated.[4] 2021 WL 219201, at *4 (explaining that it does "not follow from Congress's use of an indefinite article that 'a sentence' means *any* sentence, even if later vacated.") (emphasis in original) (citing *Uriarte*, 975 F. 3d at 604); *see also United States v. Henry*, 983 F.3d 214, 221 (6th Cir. 2020). Similarly, the Fourth Circuit rejected the Government's attempt to exclude individuals "initially sentenced before" the FSA enactment from the benefits of the FSA, even if those sentences were later vacated. *Id.* at *4-5. ("We do not read Section 401(c) to []prohibit application of the FSA to individuals whose sentences have been vacated after the FSA's enactment."). The Fourth Circuit explained that "the district court's vacatur and reentry of judgment nullified Bethea's original sentence such that a sentence cannot legally be said to have been imposed until 2019." *Id.* at *5. As such, Mr. Bethea qualified as a "pre-FSA offender serving a post-FSA sentence," and, accordingly, "[fell] within the ambit of Section 401(c)." *Id.* at *4.

The Court agrees with and extends the Fourth Circuit's holding and reasoning to the instant case.[5] As a result of Mr. Rosario's § 2255 petition, this Court vacated Defendant's

---

[4]  The Government raises the identical arguments in this case. *See* Gov. Br., Dkt. 108 at 2-4.

[5]  Although the Second Circuit has yet to rule on this issue directly, it has twice suggested that the FSA may apply to resentencings. *United States v. Brown*, 935 F.3d 43, 46 n.1, 49 (2d Cir. 2019) (noting that, as a result of the court's remand, "Brown will have the opportunity to argue that he is nevertheless entitled to benefit from section 403(b) of the Act" and noting that "[r]esentencing will also afford Brown the opportunity to argue that he should benefit from section 403(b) of the First Step Act of 2018."); *see also United States v. Walker*, 830 F. App'x 12, 17 n.2 (2d Cir. 2020) (noting that the "Government agreed that at a resentencing that would occur as a result of our remand, [defendant] would benefit from the [FSA's] reforms."). The Government argues that it is not bound by any

conviction on Count 6 and ordered resentencing. Dkt. 110; 16-CV-4469, Dkt. 37. Accordingly, Mr. Rosario's pre-FSA sentence is a "legal nullity," and a sentence was not "imposed," for purposes of § 403(b) of the FSA, until March 30, 2021, long after the FSA was enacted. *See Bethea,* 2021 WL 219201, at *5 (explaining that because defendant's "vacated sentence is a legal nullity, it matters not when that vacatur occurred, because his only legally effective sentence was imposed after the FSA's enactment"); *see also United States v. Hadden,* 475 F.3d 652, 664 (4th Cir. 2007) ("[T]he end result of the resentencing or correction of the prisoner's sentence [under § 2255] is an entirely new sentence"). As such, the FSA's amendments to § 924(c) apply to Defendant's new, post-FSA sentence.[6] *See Bethea,* 2021 WL 219201 at * 6 ("Any new sentence imposed after [the FSA's] enactment must comply with the FSA's requirements."); *Acosta v.*

---

concession made in that case. Without agreeing or disagreeing with that proposition, it seems clear to this Court that if the Second Circuit had disagreed with the concession, it would have said so rather than endorsing it.

The Court acknowledges the Second Circuit's recent decision in *United States v. Bryant*, but finds it to be materially distinguishable from this case. In *Bryant*, the Second Circuit considered whether the FSA's amendments to the prior felony offender penalty provision contained in 21 U.S.C. § 841(b)(1)(A) applied to a defendant seeking a sentence reduction pursuant to § 404(b) of the FSA based on changes to the penalties associated with trafficking in crack cocaine. *See United States v. Bryant*, No. 20-1078, 2021 WL 1148819, at *1 (2d Cir. Mar. 26, 2021). Section 401(a) of the FSA amended the prior felony offender penalty provision so that the statute's mandatory sentencing enhancement applies only when a defendant has "a prior conviction for a *serious* drug felony or *serious* violent felony," and not just when a defendant, such as Mr. Bryant, has a prior conviction for a "felony drug offense." FSA § 401(a)(2)(B). As noted in text, § 401(c) of the FSA provides that the Section 401(a) amendments apply retroactively to "any offense that was committed before the date of enactment of [the FSA], if a sentence for the offense has not been imposed as of such date of enactment." In *Bryant*, the Second Circuit reasoned that Mr. Bryant could not benefit from the changed law because his initial sentence was imposed in 2007, prior to the FSA's enactment. 2021 WL 1148819, at *4. Although his pre-FSA sentence was subsequently *reduced*, it was not vacated and therefore existed "as of" the date of the FSA's enactment. Here, by contrast, as noted *supra*, Mr. Rosario's sentence was vacated pursuant to a § 2255 petition and is therefore a legal nullity. Accordingly, Mr. Rosario's sentence was not "imposed," for purposes of § 403(b) of the FSA, until March 30, 2021, long after the FSA's enactment.

[6]     The Court is unpersuaded by the Government's argument based on the Federal Savings Statute. Gov. Br., Dkt. 108 at 4-5. The Federal Savings Statute provides that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide." 1 U.S.C. § 109. The Savings Statute applies unless Congress "clearly indicated to the contrary." *Dorsey v. United States*, 567 U.S. 260, 264 (2012). Here, § 403(b) of the FSA explicitly provides that it will apply to individuals whose conduct predated its enactment so long as a sentence "has not been imposed as of" the date of enactment. "This provision is thus a clear exception to the general rule codified in the savings statute." *Bethea*, 2021 WL 219201, at *6 n.10 (citing *Uriarte*, 975 F.3d at 602); *see also Jackson*, 2019 WL 2524786 * 1 ("The Court finds that the express language in Section 403(b) demonstrates Congress's intent to apply the Section 924(c) penalty provisions retroactively.").

*United States*, No. 03-CR-00011, 2019 WL 4140943, at *9 (W.D.N.Y. Sept. 2, 2019) (granting petitioner's § 2255 petition, vacating defendant's sentence on three counts, and holding that the FSA would apply to defendant's resentencing); *United States v. Crowe*, 11-CR-20481, 2019 WL 7906591, at *3 (E.D. Mich. Aug. 28, 2019) (holding that the FSA applied to defendant's resentencing after his original sentence was vacated in 2019 pursuant to a § 2255 petition); *United States v. Jackson*, 15-CR-453, 2019 WL 2524786 *2 (N.D. Ohio June 18, 2019) (*appeal filed* in *United States v. Jackson*, Case No. 19-3711 (6th Cir. July 29, 2019)) ("It makes little sense to interpret Section 403(b) in a manner that prevents a defendant from the application of an expressly retroactive amendment based on a sentence that became, in essence, a nullity.").

Moreover, the Court notes that applying the FSA to Defendant's resentencing is consistent with and furthers Congress's "goal to end the harsh practice of stacking multiple § 924(c) convictions."[7] *Henry*, 983 F.3d at 218, 225 ("Congress recognized that such lengthy sentences for persons without any prior final § 924(c) convictions were draconian and sought to end the practice."); *Crowe,* 2019 WL 7906591, at *4 (noting that failing to apply the FSA to a defendant at resentencing would be "dramatically out-of-step [] with the rest of the Act" and "fly in the face of basic principles of fairness, justice, and common sense.").

In sum, the Court holds that the FSA's amendments to § 924(c)(1)(C) apply to Defendant's resentencing.

---

[7] Although the Court does not find the FSA to be ambiguous in its intent to apply to defendants whose sentences are vacated after its enactment, to the extent any statutory ambiguity exists, it must be resolved in favor of Mr. Rosario. *Jones v. United States*, 529 U.S. 848, 849 (2000) ("Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."); *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (explaining that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose.").

## II.   Application of Armed Career Criminal Act and Career Offender Guideline

The Armed Career Criminal Act ("ACCA") sets a mandatory minimum sentence of fifteen years if a defendant violates 18 U.S.C. § 922(g) and has at least three previous convictions for a "violent felony."  18 U.S.C. § 924(e)(1).  Similarly, the career offender provisions of the Sentencing Guidelines provide for an enhanced offense level when an adult defendant is convicted of a felony "crime of violence" and has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.2(a)(1).  Under both the ACCA and the career offender provision of the Guidelines, the predicate crimes of violence must have been "committed on occasions different from one another."  18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.2(c)(2).

An offense is a crime of violence, for ACCA purposes, if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  "Physical force" means "violent force" or "force capable of causing physical pain or injury."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  To determine whether a prior conviction qualifies as a crime of violence for ACCA or Guidelines purposes, if the statute is indivisible, courts employ a "categorical approach."[8]  *United States v. Evans*, 924 F.3d 21, 25 (2d Cir. 2019).  The categorical approach requires the Court to "evaluate a prior conviction 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'"  *Id.* at 25 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).  Under the categorical approach, the Court must determine whether "the minimum criminal conduct necessary for conviction under a particular statute" falls

---

[8]   The Government concedes that the Puerto Rico robbery statute is indivisible and should be analyzed under the categorical approach.  Gov. Br., Dkt. 108 at 9.

within the scope of the force clause at issue. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018); *United States v. Genao,* 869 F. 3d 136, 144-45 (2d Cir. 2017).

Here, the parties agree that Defendant's Eastern District of Virginia convictions for postal robbery and using a weapon in connection with a crime of violence constitute ACCA and career offender predicates. *See* Gov. Br., Dkt. 108 at 9. Because those offenses were committed on the same date, however, they count as only one predicate offense. Accordingly, whether Defendant is subject to the ACCA and career offender enhancements depends on whether Defendant's many robbery convictions under Puerto Rico law constitute crimes of violence.[9]

In *Stokeling v. United States*, 139 S. Ct. 544 (2019), the Supreme Court considered whether robbery under Florida law is a violent felony under ACCA. Under Florida law, robbery is defined as "the taking of money or other property . . . from the person or custody of another . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." *Id*. at 554 (quoting Fla. Stat. § 812.13(1) (1995)). The Florida Supreme Court has held that the "use of force" necessary to commit robbery requires "resistance by the victim that is overcome by the physical force of the offender." *Robinson v. State*, 692 So.2d 883, 886 (1997). Under Florida law, mere "snatching of property from another," however, is insufficient to constitute robbery.[10] *Id*. In *Stokeling*, the Supreme Court held that "the elements clause encompasses robbery offenses that require the criminal to overcome the victim's resistance." 139 S. Ct. at 550. The Court explained that "physical force," as contemplated by ACCA, "includes the amount of force necessary to overcome a victim's resistance," because such force, however

---

[9] The Government does not contend that Defendant's kidnapping or weapons violation convictions are ACCA or career offender predicates. Gov. Br., Dkt. 108 at 9.

[10] Florida has a separate "Robbery by sudden snatching" statute. Under that statute, it is not necessary to show either that the defendant "used any amount of force beyond that effort necessary to obtain possession of the money or other property" or that "[t]here was any resistance by the victim to the offender." Fla. Stat. § 812.131 (1999).

slight, is "inherently 'violent' in the sense contemplated by *Johnson*." *Id*. at 553-55 ("Robbery that must overcome a victim's will—even a feeble or weak-willed victim—necessarily involves a physical confrontation and struggle.").[11] In other words, any force that is sufficient to overcome a victim's resistance, however minor, is force "capable of causing physical injury within the meaning of *Johnson*." *Id*. at 554 (internal quotation marks omitted). Accordingly, because robbery under Florida law requires force sufficient to overcome a victim's resistance, the Supreme Court held that it qualifies as a "violent felony" under ACCA. *Id*. at 555.

Here, the Government argues that the Court should apply the *Stokeling* holding and find that robbery under Puerto Rico law also qualifies as a crime of violence. Gov. Br., Dkt. 108 at 11. At the time of Defendant's convictions, the crime of robbery under Puerto Rico law was defined as:

> [U]nlawfully appropriat[ing] the personal property belonging to another for himself, whether taking it from his person or from the person having possession thereof, in his immediate presence and against his will, by means of violence or intimidation . . .

Article 173 of the 1974 Penal Code, 33 L.P.R.A. § 4279 (*quoted in Pueblo v. Batista Montanez*, 13 P.R. Offic. Trans. 401, 403 (1982)). The Supreme Court of Puerto Rico has held that "any use of force or aggression which has or may have the effect of forcing a person to give up his property" is sufficient to constitute the force required by the statute. *Pueblo v. Diaz Diaz*, 102 D.P.R. 535, 539 (1974). The Supreme Court of Puerto Rico has also held, however, that "robbery by sudden snatching exists in Puerto Rico, that the slightest use of force is sufficient for

---

[11] The Supreme Court also based its holding, *inter alia*, on the history of ACCA. The Court explained that ACCA incorporated the common law definition of robbery, and that, at common law, a person committed robbery by seizing property from another through use of force sufficient to overcome the victim's resistance. 139 S. Ct. at 551. ("By retaining the term 'force' in the 1986 version of ACCA and otherwise '[ex]pan[ding]' the predicate offenses under ACCA, Congress made clear that the 'force' required for common-law robbery would be sufficient to justify an enhanced sentence under the new elements clause.") (alterations in original).

the commission of the crime, and that the absence of bodily injury or even the danger to the victim or *lack of opportunity to resist violence*, do not have the effect of reducing the offense to the category of unlawful appropriation." *Batista Montanez*, 13 P.R. Offic. Trans. at *410 (emphasis added).  In other words, unlike the Florida law at issue in *Stokeling*, robbery under Puerto Rico law includes "sudden snatching," even if the victim has no "opportunity to resist." *Id*.  Accordingly, robbery under Puerto Rico law does not categorically require the use of force sufficient to overcome the victim's resistance.  As such, it is not a predicate offense for ACCA or Guidelines purposes.  *See Stokeling*, 139 S. Ct. at 555 (noting that "purse snatching" is "something less" than the Court's "understanding of 'physical force'"); *United States v. Dinkins*, 928 F.3d 349, 354–55 (4th Cir. 2019) (noting that because, under *Stokeling*, "the formulation of physical force presupposes some amount of resistance on the part of the victim, [] a robbery offense that can be committed by the mere snatching of property will not suffice to meet the ACCA's definition of physical force") (internal citation omitted); *Ward v. United States*, 936 F.3d 914, 919 n.4 (9th Cir. 2019) ("*Stokeling* made clear that force involved in snatchings, where there is no resistance, is not sufficient to fall under the ACCA's force clause"); *United States v. Bong*, 913 F.3d 1252, 1264 (10th Cir. 2019) (holding that because robbery under Kansas law can be committed by the "mere snatching of the purse . . . without any application of force directly to the victim, and . . . without any resistance by or injury to the victim," the force required by the statute "falls short of the 'violent force' required under the ACCA's elements clause."); *Rodriguez-Mendez v. United States*, 05-CR-0340, 2020 WL 1181980, at *2  (D.P.R. Mar. 11, 2020) ("Due to the broad definition [of robbery under Puerto Rico law], the Court must conclude that robbery is not a violent felony under the ACCA force clause."); *Diaz-Rodriguez v. United States,* No. 16-CV-2064, 2020 WL 265932, at *2 (D.P.R. Jan. 17, 2020) (holding that "robbery

under Puerto Rico law does not categorically qualify as a crime of violence under the force clause.") (citing *Stokeling*, 139 S.Ct. at 555).

## CONCLUSION

For the foregoing reasons the Court finds that the First Step Act applies to Defendant's resentencing and that Defendant is not subject to the ACCA mandatory minimum or career offender provision of the Sentencing Guidelines.

**SO ORDERED.**

**Date:  March 30, 2021**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**